Hon. Kymberly K. Evanson

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TAFT CHARLES and JOYCE WHITE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CHIME FINANCIAL, INC.,<br><br>Defendant. | NO. 2:25-CV-01361-KKE<br><br>CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE CONSUMER PROTECTION ACT, RCW 19.86, AND THE COMMERCIAL ELECTRONIC MAIL ACT, RCW 19.190<br><br>DEMAND FOR TRIAL BY JURY |

COME NOW the Plaintiffs, TAFT CHARLES and JOYCE WHITE, by and through undersigned counsel, for causes of action against the above-named Defendant, Chime Financial, Inc. (hereinafter "Defendant" or "Chime"), and complain and allege as follows:

1. Chime is a financial technology company that offers banking products and services in partnership with national banks, including services that allow consumers to get advances on their direct deposits,[1] through its website (www.chime.com) and mobile app (the "Chime Mobile App" or "Defendant's App"). Chime is a NASDAQ-listed public company trading under the ticker symbol CHYM.

2. As one way of attracting new customers to its platform, Chime compensates

[1] *See* About Us, www.chime.com/about-us/ (last visited July 30, 2025).



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

existing customers who refer their friends and contacts to Chime.[2] Chime encourages users to refer their contacts to its services by rewarding users for each successful referral. Under the current incentives offered by the referral program, when a referred individual signs up for Chime using the referring individual's specific referral link and makes a "qualifying direct deposit" of at least $200 within 45 days of opening their account, Chime deposits a reward into the accounts of the referring user and the referred contact.[3]

3. While this may be a profitable and shrewd approach to new customer acquisition, in practice Chime's referral program violates the Washington Consumer Electronic Mail Act ("CEMA"), RCW 19.190.010 *et seq.* Chime violated and continues to violate CEMA by initiating commercial text messages and assisting its existing customers in the transmission of commercial text messages to Washington residents without first obtaining clear and affirmative consent. *See* RCW 19.190.060(1). The legislature determined that this practice constitutes "an unfair or deceptive act in trade or commerce and an unfair method of competition for the purpose of applying the [CPA]." RCW 19.190.060(2). Thus, a violation of CEMA is a *per se* violation of the CPA. *See* RCW 19.190.100; *Wright v. Lyft, Inc.*, 182 Wn.2d 718, 723 (Wash. 2017); *Gordon v. Robinhood Fin. LLC*, No. 2:19-CV-0390-TOR, 2021 U.S. Dist. LEXIS 13457, at *14–15 (E.D. Wash. Jan. 25, 2021) ("A CPA violation is established with an RCW 19.190.060 violation in conjunction with CEMA's damages provision.").

4. Plaintiffs received referrals to Chime through commercial electronic text messages ("Referral Text Messages") at phone numbers assigned to Washington residents for cellular telephone service. *See* RCW 19.190.060(3), (6) (defining "commercial electronic text message" and "electronic text message"). Plaintiffs did not provide advance consent to receive Chime referral messages on their cell phones.

---

[2] Chime Team, *Chime's Referral Program: Everything You Need to Know* (March 24, 2025) ("Chime Team"), available at https://www.chime.com/blog/chime-referral-program/.

[3] *Id.*



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

5. Plaintiffs bring this action as a class action on behalf of themselves and similarly situated Washington residents who received Chime's illegal spam texts. Plaintiffs' requested relief includes an injunction to end these practices, an award to Plaintiffs and class members of statutory damages for each illegal text, and an award of attorneys' fees and costs.

6. Plaintiff Taft Charles is a natural person residing in Oakville, Washington.

7. Plaintiff Joyce White is a natural person residing in San Juan County, Washington.

8. Defendant Chime Financial, Inc. is incorporated in Delaware and headquartered in San Francisco, California. Defendant provides and markets its products and services nationwide, including to Washington consumers, and conducts related business activities throughout Washington state. Defendant is a "person" as that term is defined in RCW 19.190.010(11) and RCW 19.86.010(1).

9. This Court has subject matter jurisdiction over this civil action pursuant to the Class Action Fairness Act, 28 U.S.C. 1332(d)(2) because the amount in controversy exceeds $5,000,000 and at least one member of the class is a citizen of a different state than Defendant.

10. This Court may exercise personal jurisdiction over the out-of-state Defendant because the claims alleged in this civil action arose from, without limitation, Defendant's assistance in the transmission of commercial electronic text messages to consumers within the State of Washington. In addition, Defendant intended, knew, or is chargeable with the knowledge that its out-of-state actions would have a consequence within Washington.

11. Venue is proper under 28 U.S.C. 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District.



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

## A. Referral marketing programs that target Washington residents with commercial electronic text messages may violate CEMA.

12. Referral marketing programs typically incentivize a company's current customers to send promotional messages to friends and contacts in exchange for compensation or rewards. In general, these programs leverage the personal connections of existing customers to target potential new customers and allow companies to communicate direct marketing messages by way of a trusted source. And because the marketing messages are sent by a known friend or contact, the recipient is more likely to read and consider the message, which may come as an interjection in an otherwise personal exchange between two friends.

13. Referral marketing programs targeting Washington residents are subject to CEMA. As applicable here, CEMA prohibits persons conducting business in the state of Washington to "initiate or assist in the transmission of an electronic commercial text message to a telephone number assigned to a Washington resident for cellular telephone or pager service that is equipped with short message capability or any similar capability allowing the transmission of text messages." RCW 19.190.060(1).[4] In a separate subsection, CEMA provides narrow statutory exemptions, including where the recipient "has clearly and affirmatively consented in advance to receive these text messages." RCW 19.190.070(1)(b). CEMA further states that a violation of this section is "an unfair or deceptive act in trade or commerce and an unfair method of competition for the purpose of applying the consumer protection act." RCW 19.190.060(2).

14. The statute provides a private cause of action to persons who received texts in

[4] "'**Initiate the transmission**' refers to the action by the original sender of an electronic mail message or an electronic text message, not to the action by any intervening interactive computer service or wireless network that may handle or retransmit the message, unless such intervening interactive computer service assists in the transmission of an electronic mail message when it knows, or consciously avoids knowing, that the person initiating the transmission is engaged, or intends to engage, in any act or practice that violates the consumer protection act." RCW 19.190.010(7).

"'**Assist the transmission**' means actions taken by a person to provide substantial assistance or support which enables any person to formulate, compose, send, originate, initiate, or transmit a commercial electronic mail message or a commercial electronic text message when the person providing the assistance knows or consciously avoids knowing that the initiator of the commercial electronic mail message or the commercial electronic text message is engaged, or intends to engage, in any practice that violates the consumer protection act." RCW 19.190.010(1).



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

violation of CEMA to enjoin further violations. RCW 19.190.090; *Wright v. Lyft, Inc.*, 189 Wash. 2d 718, 728 n.3 (Wash. 2017) (stating that "a plaintiff may bring an action to enjoin any CEMA violation").

15. Plaintiffs also may recover damages for a CEMA violation by way of a CPA action. *See Wright*, 189 Wash. 2d at 727 ("CEMA's plain language demonstrates the legislature's intent that the recipient of unsolicited text messages bring a CPA claim" to recover damages). To establish a violation of Washington's CPA, a claimant must establish five elements: (1) an unfair or deceptive act or practice, (2) in trade or commerce, (3) that affects the public interest, (4) injury to plaintiff's business or property, and (5) causation. *Hangman Ridge Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 780 (1986). A violation of RCW 19.190.060 establishes all five elements of the CPA by way of RCW 19.190.060(2) (providing the practices prohibited under the statute "are matters vitally affecting the public interest" and "are not reasonable in relation to the development and preservation of business" and constitute "an unfair or deceptive act in trade or commerce and an unfair method of competition" for the purpose of applying the CPA). *See Lyft*, 189 Wash.2d at 733 (holding a violation of RCW 19.190.060 establishes the injury and causation elements of a CPA claim as a matter of law).

16. "Damages to the recipient of . . . a commercial electronic text message sent in violation of this chapter are five hundred dollars, or actual damages, whichever is greater." RCW 19.190.040.

**B. Defendant's referral marketing program violates CEMA.**

17. Chime promotes the sale of its products and services through its referral marketing program. Through its referral marketing program, Chime initiates and assists in the transmission of electronic commercial text messages to Washington residents who have not clearly and affirmatively consented in advance to receive these text messages, and in fact have not consented to receive these text messages at all. Accordingly, Chime violates CEMA.

18. In the current version of the Chime Mobile App, it takes just a few taps for a



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Chime user to select one or more contacts from a phone and transmit a text message that has been prepopulated with a marketing message and a customized referral link to download the Chime app. The customized referral link allows Chime to associate any new customer sign-up with the existing customer who generated the link.

19. As shown in **Figure 1**, Chime's refer-a-friend program is prominently promoted at the top of the main Accounts screen in the Chime Mobile App with a button referencing the prevailing compensation offer for referring new customers.




*Figure 1: top of Accounts screen showing "Get $100" button (captured March 28, 2025)*

20. One tap on the words "Get $100" takes the Chime user to the screen depicted at **Figure 2**. From this screen, Chime facilitates the transmission of precomposed marketing messages and customized sign-up links by its users with just a few additional taps. With the user's permission, the Chime Mobile App accesses the user's phone contacts and allows the user to select individuals to receive a precomposed commercial text message. Chime suggests sending invitations to the first three people from the alphabetical list of contacts stored on the user's phone. In addition, by tapping the "Share your link" button, the user can send the referral message and link to other friends.



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992




*Figure 2: Referral screen in Chime app (captured March 28, 2025)*

21. When the user clicks on "Get $100" next to a friend's name, the user's phone opens a new text message to that recipient and inserts the text of its precomposed marketing message and customized referral link, as shown in **Figure 3**. The only additional action the user must take is to transmit the message by tapping the send icon.




*Figure 3: Draft text message as shown in Messages app (captured March 28, 2025)*



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

22. If the user taps "Share your link" on the screen shown in **Figure 2**, the Chime app will display the main referral program screen, shown in **Figure 4**. This screen explains the prevailing referral program incentives for new and existing users, encourages users to send the link to multiple friends to earn compensation for each successful referral, allows the tracking of "milestones" based on referral program earnings, and shows previous referrals and their status.




*Figure 4: Main referral program screen (captured March 28, 2025)*

23. By tapping "Show all" next to "Invite friends," the user can access the entire contacts list on her device, as shown in **Figure 5**. The only additional action required by the user from that screen is to select one or more recipients and send the text. This can be done in serial fashion to spam multiple recipients with the same message, which the design of the app incentivizes the user to do. Indeed, by encouraging users to "Track [their] milestones," including



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

the total amount of money the user has earned, Chime appears to gamify the referral process, further incentivizing its users to spam their contacts with Chime's commercial messages. Chime also selects certain contacts and highlights them as "Suggested" referrals at the top of the list, further injecting itself into the selection of particular contacts who receive a referral message.




*Figure 5: "Your contacts" screen with all phone contacts listed (captured March 28, 2025)*

24. By tapping "Your invites" in **Figure 4**, the user can view a list of invitations that the user previously sent to friends, as shown in **Figure 6**. The green "Remind" button next to each previously invited friend encourages the user to send a follow-up referral message to the user. On information and belief, this screen also lists any recipients who signed up for a new Chime account using the referral link provided by the user.



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992




*Figure 6: "Your invites" screen with previous invites listed (captured March 28, 2025)*

25. The question-mark icon at the top of **Figure 4** takes the user to a webpage that describes the refer-a-friend program in greater detail, as shown in **Figure 7**. This screen addresses issues such as qualification requirements for bonuses. It does not mention restrictions on sending text messages to Washington residents or the need to obtain consent (let alone clear and affirmative consent) prior to transmitting a Referral Text Message.




*Figure 7: Screenshot of "How referrals works" screen (captured May 30, 2025)*



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

26. As Chime has explained in securities filings, it differentiates its referral incentives among its users. One Chime user recently posted a screenshot of her referral screen to a public Facebook page showing an increased referral incentive of $300 per referred user, as shown in **Figure 8**.




*Figure 8: Referral screen showing increased referral bonuses*

27. On March 24, 2025, Chime posted an article on its website entitled "Chime's Referral Program: Everything You Need to Know."[5] The article encourages users to share a unique referral link "via text, email, or on social." It encourages users to refer up to 10 people per year to maximize their rewards earning. And it encourages users to access the referral

[5] https://www.chime.com/blog/chime-referral-program/ (last accessed June 16, 2025).



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

program from the Chime mobile app, an environment that is conducive to easy facilitation of text messaging. While purporting to tell users "Everything [They] Need to Know" about Chime's referral programs, this blog post does not mention any restrictions on sending text messages to Washington residents or the need to obtain consent of any kind (let alone clear and affirmative consent) from recipients prior to transmitting a referral text message.

28. Through its refer-a-friend program, Chime substantially assists and supports its existing users in transmitting Referral Text Messages to Washington residents who have not consented to receive those messages. Defendant substantially assists and supports its users in sending Referral Text Messages by, *inter alia*: a) encouraging and incentivizing its users to send Referral Text Messages by compensating them with money; b) technologically enabling its users to initiate Referral Text Messages through the Chime Mobile App; c) generating and providing unique user-specific referral links that a text recipient can use to sign up for Defendant's services; and d) composing text to be sent as part of the "Invite friends" text messages.

29. Defendant knows that its users are seeking payment through the referral program for referring Washington residents to Chime, often by electronic text message. Defendant does not obtain recipients' clear and affirmative consent in advance to receive Referral Text Messages and consciously avoids knowing whether its users send Referral Text Messages without obtaining recipients' clear and affirmative consent in advance to receive these messages. Defendant does not employ any meaningful controls from within the App to ensure that its users obtain recipients' clear and affirmative consent in advance to receive Referral Text Messages before enabling them to send the messages.

30. In the alternative, Chime initiates the transmission of Referral Text Messages through its agents, *i.e.*, its customers tasked with sending Referral Text Messages to their friends and acquaintances. Chime users who use the referral program act as agents of Chime, which grants users the right to send out scripted text messages on its behalf. Chime composes the messages, generates personalized links uniquely associated with referring user, and tells Chime



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

users to send out the Referral Text Messages, including by suggesting specific recipients. It also pays users for referrals.

31. When initiating the transmission of Referral Text Messages to their contacts, Chime users are actual agents of Chime. Chime authorizes them to initiate the transmission of those messages on Chime's behalf. Chime also controls the process for initiating the sending of Referral Text Messages to Washington residents as described above. Chime composes the text for the message, generates the referral links and referral web pages, and directs existing customers to send the messages. And Chime pays existing users to refer their friends by offering lucrative referral bonuses.

32. Chime users are also apparent agents of Chime. The text messages that Chime drafts for its users create the impression that the sender has authority to act on behalf of Chime. The text messages were written by Chime, reference Chime, and contain a link to Chime's website. This reasonably leads recipients to believe that the senders have authority to transmit messages on Chime's behalf.

33. Chime also ratifies the acts of its users in sending Referral Text Messages. Chime knows its customers use the referral link to text cell phone users in Washington because it promotes its referral program nationwide, including in Washington, and it knows that consumers nationwide and in Washington are likely to text cell phone users in Washington with these texts. Chime fails to check whether the consumer has consented before directing its existing user to send Referral Text Messages. Chime knows, or consciously avoids knowing, that its users are not obtaining legally sufficient consent to send text messages to Washington residents. Even so, Chime continues encouraging its users to send Referral Text Messages.

34. In marketing this and other referral programs to its customers, Chime encourages and incentivizes its users to contact their friends and acquaintances regarding Chime's services, including via SMS text message and other messaging services with similar capabilities. Chime offers remuneration to its customers for each successful referral. Chime also offers remuneration



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

to new customers who sign up by way of a referral link sent by an existing customer. Under the current incentives, when a referred individual signs up for Chime and completes the required steps to establish their account, both the referring customer and the referred individual receive monetary compensation.

35. Chime does not require its customers to affirmatively confirm that they have obtained consent prior to sending Referral Text Messages. Chime also does not advise customers not to send Referral Text Messages to Washington residents. Chime also does not advise users to obtain clear and affirmative consent from recipients to transmit a Referral Text Message with a marketing message and sign-up link for Chime.

36. As a result, Plaintiffs and other consumers in Washington who have not clearly and affirmatively consented (and in fact, have not consented at all) to receiving these messages receive these unwanted Referral Text Messages, including SMS messages and messages sent via similar platforms like WhatsApp.

37. Chime's Referral Text Messages and the accompanying hyperlinks are commercial in nature. The messages and hyperlinked websites promote or encourage the use of Chime's products and services and serve to increase Chime's revenue by expanding its base of paying customers. When a new user signs up using a referral link, the new user must set up a qualifying direct deposit into the new account and activate a physical Chime Visa Debit Card within 14 days of receiving a qualifying direct deposit. Chime makes money from the interchange fee charged on debit card transactions as well as fees imposed on users, such as out-of-network ATM fees. Because the Chime products and services promoted via the text messages at issue were offered "for sale" within the meaning of RCW 19.190.010(3), the messages at issue were commercial electronic text messages.

38. Without an influx of new users generated through its referral program, Chime's revenue would be adversely impacted. As stated by Chime in a recent filing with the Securities and Exchange Commission, "since 2022, member referrals have been the single largest channel



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

of new Active Member growth at Chime."[6] Chime benefits from the transmission of illegal text messages to Washington residents because it can advertise its products and services, sign up new customers, and gain market share by converting new customers in Washington. As Chime has recognized in public filings and investor communications, Chime's ability to attract and retain new customers is critical to its business. Chime's investor disclosures describe the importance of its "Member-Aligned, Self-Reinforcing Flywheel" of growing its revenue through financially incentivized "member referrals."[7] Chime even uses machine-learning models "to identify high-value referrals and dynamically adjust incentives" for new customer signups.[8] As a result of this strategic focus, Chime reports that its sales and marketing expenses, which include payment of referral bonuses, "have trended upwards on an annual basis."[9] Chime reported sales and marketing expenses of more than $519 million for the fiscal year ending December 31, 2024.[10] As its sales and marketing expenses have increased, its revenues have increased. Thus, there is a direct link between the referral program, which Chime uses to generate sales and grow its market share, and the commercial success of Chime.

39. Chime generates most of its revenue through interchange fees from debit and credit card transactions by its users.[11] So the more users it has, the more purchases are made with its products, and the more revenue it earns. Additionally, Chime generates "platform-related revenue from other products offered to [consumers] that provide additional convenience, financial management tools, and access to liquidity."[12] This includes "fees from access to out-

---

[6] Form S-1 Registration Statement for Chime Financial, Inc., at 4 (as filed May 13, 2025) ("Form S-1"), https://www.sec.gov/Archives/edgar/data/1795586/000162828025025059/chimefinancialinc-sx1wq1da.htm.

[7] *Id.* at 150.

[8] *Id.* at 174.

[9] *Id.* at 118.

[10] *Id.* at 18.

[11] *Id.*

[12] *Id.*



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

of-network ATMs, MyPay instant transfer fees, net revenue based on high yield savings balances, partnerships revenue (which includes referral fees for third-party products), voluntary SpotMe tips, and fees from cash deposits made at locations outside [its] free network."[13] For these products as well, the more users Chime has, the more revenue Chime earns. Thus, Defendant pays its users to recruit additional users to drive revenues. Chime encourages users to send referrals to as many people as possible and to send reminders in order to "earn the most from Chime's referral program."[14]

**C. Defendant assisted in the transmission of Referral Text Messages to Plaintiffs.**

40. At all times relevant to this Complaint, Plaintiffs have resided in the State of Washington.

41. At all times relevant to this Complaint, Plaintiffs have subscribed to a cellular telephone number with a Washington Area code.

42. Plaintiffs' cellular telephones have the capacity to send and receive transmissions of electronic text messages.

***Plaintiff Taft Charles***

43. On January 6, 2025, Plaintiff Charles received an unsolicited commercial electronic text message inviting him to sign up for Defendant's services. The text included Chime's pre-composed, standardized language and contained a unique referral link directing Plaintiff to create an account.

44. Below is a screenshot of the text Plaintiff Charles received:




[13] *Id.*

[14] Chime Team, *supra* n.2.



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

45. Plaintiff Charles did not provide clear and affirmative consent to receive the Chime referral text message.

46. Plaintiff Charles's privacy was invaded by the text message he received promoting Defendant's products and services. Plaintiff Charles had no means of opting out of receiving the unsolicited commercial text message and still has no means of opting out of future referral messages. Thus, Plaintiff Charles faces an imminent threat of future harm. Without an injunction, Plaintiff Charles has no realistic way to stop the transmission of future Chime referral messages to his personal phone number.

***Plaintiff Joyce White***

47. On February 20, 2024, Plaintiff White received an unsolicited commercial electronic text message inviting her to sign up for Defendant's services. The text included Chime's pre-composed, standardized language and contained a link directing Plaintiff to Chime's website to create an account thereon.

48. This is a screenshot of the text Plaintiff White received:




49. Plaintiff White did not provide clear and affirmative consent in advance to receive the text message above.

50. Plaintiff White's privacy was invaded by the text message she received promoting Defendant's products and services. Plaintiff White had no means of opting out of receiving the unsolicited commercial text message and still has no means of opting out of future referral



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

messages. Thus, Plaintiff White faces an imminent threat of future harm. Without an injunction, Plaintiff White has no realistic way to stop the transmission of future Chime referral messages to her personal phone number.

51. Class Definition. Plaintiffs bring this case as a class action under Fed. R. Civ. P. 23(b)(3), on behalf of a Class defined as:

> All persons[15] who, within the applicable statute of limitations period, received a Chime Referral Text Message to their cellular telephone number while residing in Washington.

Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest or that has a controlling interest in Defendant, and Defendant's legal representatives, assignees, and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

52. Numerosity and Ascertainability. The Class is so numerous that joinder of all members is impracticable. The Class has more than 1,000 members. Moreover, the disposition of the claims of the Class in a single action will provide substantial benefits to all parties and the Court. On information and belief, the Class can be identified through Defendant's records.

53. Commonality. There are numerous questions of law and fact common to Plaintiffs and members of the Class. The common questions of law and fact include, but are not limited to:

a. Whether Defendant assisted the transmission of commercial electronic text messages to recipients residing in the State of Washington in violation of RCW 19.190.060;

b. Whether a violation of RCW 19.190.060 establishes all the elements of a claim under Washington's Consumer Protection Act, RCW 19.86 *et seq.*;

c. Whether Plaintiffs and the proposed Class are entitled to an injunction enjoining Defendant from sending the unlawful texts in the future;

d. Whether class-wide injunctive relief is necessary to prevent future harm;

---

[15] As that term is defined in RCW 19.190.010(11) and RCW 19.86.010(a).



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

and

e. The nature and extent of Class-wide injury and damages.

54. Typicality. Plaintiffs' claims are typical of the claims of the Class. Plaintiffs' claims, like the claims of the Class, arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

55. Adequacy. Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have retained competent and capable attorneys with significant experience in complex and class action litigation, including consumer class actions and class actions involving unlawful text messages under Washington law. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so. Neither Plaintiffs nor their counsel have interests that are contrary to or that conflict with those of the proposed Class.

56. Predominance. Defendant has a standard practice of assisting the transmission of commercial electronic text messages to subscribers of cellular telephone numbers residing in the State of Washington. The common issues arising from this conduct predominate over any individual issues. Adjudication of these issues in a single action has important and desirable advantages of judicial economy.

57. Superiority. Plaintiffs and members of the Class have been injured by Defendant's unlawful conduct. Absent a class action, however, most Class members likely would find the cost of litigating their claims prohibitive. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. The members of the Class are readily identifiable from Defendant's records and there will be no significant difficulty in the management of this case as a class action.

58. Injunctive Relief. Certification for injunctive relief is appropriate under Federal Rule of Civil Procedure 23(b)(2). Defendant's conduct is uniform as to all members of the Class.



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Defendant has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or declaratory relief is appropriate with respect to the Class as a whole. Plaintiffs further allege, on information and belief, that the texts described in this Complaint are substantially likely to continue in the future if an injunction is not entered.

**FIRST CLAIM FOR RELIEF**
**Violations of Washington's Commercial Electronic Mail Act, RCW 19.190, *et seq*.**
**(By Plaintiffs Charles and White on behalf of the Class)**

59. Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

60. Washington's CEMA prohibits any "person," as that term is defined in RCW 19.190.010(11), from initiating or assisting the transmission of an unsolicited commercial electronic text message to a Washington resident's cellular telephone or similar device.

61. Defendant is a "person" within the meaning of the CEMA, RCW 19.190.010(11). Defendant is a corporation, and the statute's definition of "person" includes a "corporation."

62. Defendant "conduct[s] business in the state" of Washington, as used in RCW 19.190.060. Defendant advertises and sells its products and services to customers in Washington and serves a market for its products and services in Washington.

63. Defendant's prepopulated referral text message and the accompanying hyperlink are each an "electronic commercial text message" within the meaning of CEMA. The messages and the accompanying hyperlinks each promote and advertise Chime's banking products and services. The primary purpose of the message and the accompanying hyperlink is to induce the recipient to funnel earnings to a Chime-affiliated checking account via direct deposit and access those funds using a Chime Visa Debit Card, which generates revenue for Chime in the form of, *inter alia*, interchange fees and ATM fees.

64. Chime provided this assistance and support by developing a chain of events leading to the transmission of commercial text messages whereby it, *inter alia*, (a) created the referral program and advertised it and made it available in its mobile app, which allows users to



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

easily send "refer-a-friend" text messages, (b) incentivized and paid Chime users to participate in the referral program, (c) prompted users to select individuals from their contacts to receive the referral message, (d) suggested sending the referral messages to specific contacts found on the user's phone based on criteria currently known only to Chime, (e) composed commercial messages for its existing customers to send along with a personalized hyperlink to sign up for Chime, and (f) prepopulated the text message field on the sender's device with the composed commercial message and personalized hyperlink.

65. In the alternative, Chime initiated the electronic commercial text messages sent to Plaintiffs and the class, using its customers as agents.

66. Plaintiffs and Class members are Washington residents who received the text messages.

67. Defendant knew, or should have known, that the text messages were transmitted to Washington residents who have not "clearly and affirmatively consented in advance to receive these text messages." RCW 19.190.070(1)(b). Defendant does not require existing customers to obtain the necessary clear and affirmative prior consent to send Referral Text Messages. There is no mechanism for existing customers to obtain the necessary consent. Defendant itself does not obtain the required consent prior to assisting in the transmission or initiating the transmission of the messages.

68. Defendant markets its referral programs nationwide, including to residents in Washington. Defendant does not check whether a Washington consumer has consented to receive the messages before assisting in sending Referral Text Messages.

69. Defendant knew, or consciously avoided knowing, that these text messages were sent to telephone numbers assigned to Washington residents for cellular telephone service equipped with short message service or similar capabilities.

70. Plaintiffs and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they received a commercial electronic text message that



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Defendant assisted in transmitting to their assigned telephone number, and (b) they never provided clear and affirmative consent in advance to receive the commercial electronic text messages from Defendant.

71. Plaintiffs and Class members are entitled to injunctive relief in the form of an order enjoining further violations of RCW 19.190.060(1).

## SECOND CLAIM FOR RELIEF
**Per se violation of Washington's Consumer Protection Act, RCW 19.86, et seq.**
**(By Plaintiffs Charles and White on behalf of the Class)**

72. Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

73. Plaintiffs and Class members are "persons" within the meaning of the CPA, RCW 19.86.010(1).

74. Defendant violated the CEMA by assisting in the transmission of an unsolicited commercial electronic text message to Plaintiffs and Class members' cellular telephones or similar devices.

75. A violation of the CEMA establishes all five elements of Washington's Consumer Protection Act as a matter of law. RCW 19.190.100; *Lyft*, 189 Wash.2d at 731-2.

76. Defendant's violations of the CEMA are unfair or deceptive acts or practices that occur in trade or commerce under the CPA. RCW 19.190.100.

77. Defendant's unfair or deceptive acts or practices vitally affect the public interest and thus impact the public interest for purposes of applying the CPA. RCW 19.190.100.

78. Pursuant to RCW 19.19.040(1), damages to each recipient of a commercial electronic text message sent in violation of the CEMA are the greater of $500 for each such message or actual damages, which establishes the injury and causation elements of a CPA claim as a matter of law. *Lyft*, 189 Wash.2d at 731-2.



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

79. Defendant engaged in a pattern and practice of violating the CEMA. As a result of Defendant's acts and omissions, Plaintiffs and Class members have sustained damages, including $500 in statutory damages, for each and every text that violates the CEMA. The full amount of damages will be proven at trial. Plaintiffs and Class members are entitled to recover actual damages and treble damages, together with reasonable attorneys' fees and costs, pursuant to RCW 19.86.090.

80. Under the CPA, Plaintiffs and members of the Class are also entitled to, and do seek, injunctive relief prohibiting Defendant from violating the CPA in the future.

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the members of the Class, request judgment against Defendant as follows:

A. That the Court certify the proposed Class;

B. That the Court appoint Plaintiffs as Class Representatives;

C. That the Court appoint the undersigned counsel as counsel for the Class;

D. That the Court should grant declaratory, equitable, and/or injunctive relief as permitted by law to ensure that Defendant will not continue to engage in the unlawful conduct described in this Complaint;

E. That, should the Court permit Defendant to engage in or rely on spam texting, it enter a judgment requiring Defendant to adopt measures to ensure CEMA compliance, and that the Court retain jurisdiction for a period of at least six months to ensure that Defendant complies with those measures;

F. That the Court enter a judgment awarding any other injunctive relief necessary to ensure Defendant's compliance with the CEMA;

G. That Defendant be immediately restrained from altering, deleting or destroying any documents or records that could be used to identify members of the Class;



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

H. That Plaintiffs and all Class members be awarded statutory damages in the amount of $500 for each violation of the CEMA pursuant to RCW 19.190.040(1) and treble damages pursuant to RCW 19.86.090;

I. That the Court award pre- and post-judgment interest;

J. That the Court enter an order awarding Plaintiffs reasonable attorneys' fees and costs; and

K. That Plaintiffs and all Class members be granted other relief as is just and equitable under the circumstances.

DATED this 5th day of September, 2025.

TOUSLEY BRAIN STEPHENS PLLC

By: */s/ Jason T. Dennett*
Jason T. Dennett, WSBA #30686
Kaleigh N. Boyd, WSBA #52684
1200 Fifth Avenue, Suite 1700
Seattle, WA 98101
Tel: 206-682-5600
Fax: 206-682-2992
Email: jdennett@tousley.com
Email: kboyd@tousley.com

Edwin J. Kilpela, Jr., admitted *pro hac vice*
James Lamarca, admitted *pro hac vice*
WADE KILPELA SLADE LLP
6425 Living Place, Suite 200
Pittsburgh, PA 15206
Tel: 412-314-0515
Email: ek@waykayslay.com
Email: jlamarca@waykayslay.com

Evan E. North*
NORTH LAW PLLC
1900 Market Street, Suite 800
Philadelphia, PA 19103
Tel: 202-921-1651
Email: evan@northlawpllc.com

E. Michelle Drake*
John G. Albanese*
BERGER MONTAGUE PC
1229 Tyler Street NE, Suite 205

Minneapolis, MN 55413
Tel: 612-594-5999
Fax: 612-584-4470
Email: emdrake@bergermontague.com
Email: jalbanese@bergermontague.com

James Hannaway*
BERGER MONTAGUE PC
1001 G Street, NW
Suite 400 East
Washington, DC 20001
Tel: 202-559-9740
Fax: 215-875-4604
Email: jhannaway@bergermontague.com

*Attorneys for Plaintiffs and the Proposed Class*

**pro hac vice* forthcoming