UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOYCE WHITE, et al.,<br><br>Plaintiff(s),<br>v.<br><br>CHIME FINANCIAL INC.,<br><br>Defendant(s). | CASE NO. C25-1361-KKE<br><br>**STIPULATED MOTION AND ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |

The parties hereby stipulate, and request the Court enter this agreement, as to the following provisions regarding the discovery of electronically stored information ("ESI") in this matter:

**A. General Principles**

1. An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

2. As provided in LCR 26(f), the proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as possible. This agreement is intended to assist the parties in identifying relevant, responsive information that has been stored electronically and is proportional to the needs of the case. The agreement does not supplant the parties' obligations to comply with Fed. R. Civ. P. 34.

**B. ESI Disclosures**

Within 30 days of entry of this Order, or at a later time if agreed to by the parties, each party shall disclose:

1. Custodians. The custodians most likely to have discoverable ESI in their possession, custody, or control. The custodians shall be identified by name, title, connection to the instant litigation, and the type of the information under the custodian's control.

2. Non-custodial Data Sources. A list of non-custodial data sources (*e.g.*, shared drives, servers), if any, that a party believes likely to contain discoverable ESI.

3. Third-Party Data Sources. A list of third-party data sources, if any, likely to contain discoverable ESI (*e.g.*, third-party email providers, mobile device providers, cloud storage) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

4. Inaccessible Data. A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B).

5. Foreign data privacy laws. Nothing in this Order is intended to prevent either party from complying with the requirements of a foreign country's data privacy laws, *e.g.*, the European Union's General Data Protection Regulation (GDPR) (EU) 2016/679. The parties agree to meet and confer before including custodians or data sources subject to such laws in any ESI or other discovery request.

**C. ESI Discovery Procedures**

1. On-site inspection of electronic media. Such an inspection shall not be required absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

2. Search methodology. The parties shall timely confer to attempt to reach agreement on appropriate search terms and queries, file type and date restrictions, data sources (including custodians), and other appropriate computer- or technology-aided methodologies, before any such

effort is undertaken. The parties shall continue to cooperate in revising the appropriateness of the search methodology.

a. Prior to running searches:

i. The producing party shall disclose the data sources (including custodians), search terms and queries, any file type and date restrictions, and any other methodology that it proposes to use to locate ESI likely to contain responsive and discoverable information. The producing party may provide unique hit counts for each search query.

ii. The parties will engage in a meet and confer process regarding the appropriateness of the search terms and queries disclosed by the producing party and requested by the requesting party.

iii. The following provisions apply to search terms / queries of the requesting party. Focused terms and queries should be employed; broad terms or queries, such as product and company names, generally should be avoided. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. The producing party may identify each search term or query returning overbroad results demonstrating the overbroad results and a counter proposal correcting the overbroad search or query.

c. Upon reasonable request, a party shall disclose the retention policy applicable to responsive information stored in a database, such as the tape rotation and destruction/overwrite policy, and the type of database where such information is stored.

3. <u>Format.</u>

a. ESI will be produced to the requesting party with searchable text in single-page TIFFs with load files for e-discovery software that includes metadata fields identifying natural document breaks and also includes companion OCR and/or extracted text files.

b. Unless otherwise agreed to by the parties, files that do not require redaction and that are not easily converted to image format, such as spreadsheet, database, and drawing files, will be produced in native format. A single page TIFF image placeholder should be provided for each document provided in native format. Each placeholder shall contain the phrase matching or similar to "DOCUMENT PRODUCED IN NATIVE FORMAT" and contain the Bates Number corresponding to the native file.

c. Each document image file shall be named with a unique number (Bates Number). File names should not be more than twenty characters long or contain spaces. When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, i.e., the original formatting, the metadata (as noted below) and, where applicable, the revision history.

d. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

e. The full text of each electronic document shall be extracted ("Extracted Text") and produced in a text file. The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

f. For structured data maintained in databases or similar systems, a producing party may produce responsive information through reasonably usable reports, spreadsheets, delimited text files, or other exports and need not produce the native database, application, or system absent a showing that materials that can only be obtained from the native database, application, or system itself (and not from reasonably usable exports) is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. A

producing party need not create new software, run burdensome custom analyses, or produce non-responsive fields to respond to ESI requests, absent agreement of the parties (not to be unreasonably withheld) or order of the Court.

4. De-duplication. The parties may de-duplicate their ESI production across custodial and non-custodial data sources after disclosure to the requesting party, and the duplicate custodian information removed during the de-duplication process tracked in a duplicate/other custodian field in the database load file.

5. Email Threading. The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies. Upon reasonable request, the producing party will produce a less inclusive copy.

6. Parent-Child Relationships. The parties shall make reasonable efforts to preserve parent-child relationships (the association between an attachment and its parent email) and those relationships must be preserved in such a way that a document and any attachments to that document are identifiable.

7. Redactions. A producing party may redact from otherwise non-privileged responsive documents confidential personal information, including financial account information, Social Security numbers, taxpayer identification numbers, dates of birth, home addresses, personal telephone numbers, personal email addresses, medical information, and other information protected from disclosure by applicable law or court order. Any such redactions shall be narrowly tailored and shall not be used to withhold non-privileged information relevant to the claims or defenses in this action. The producing party shall identify each such redaction on the face of the document with a label such as “Redacted – Confidential Personal Information” or a substantially similar designation. If a receiving party believes that a redaction is improper or overbroad, the parties shall meet and confer in good faith, and any unresolved dispute may be presented to the Court.

9. Metadata fields. The parties agree to produce the following metadata fields. The parties are under no obligation to manually populate these fields. The Parties agree that all fields with an asterisk* will not be required to be produced if the files require redaction.

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| CUSTODIAN | Individual from whom the documents originated |
| OTHER_CUSTODIAN | Individual(s) that had electronic files that were removed due to de-duplication |
| DOCTYPE | Description of document (Email, Attachment, Edoc, Hard Copy) |
| EXTENSION | Characters of the filename indicating the relevant program used to open the file (file extension) |
| FULLPATH* | The directory structure of the original file(s). Any container name is included in the path. |
| HASHVALUE | The MD5 or SHA-1 hash value. |
| NATIVELINK | Native File Link for agreed upon native files, if applicable (for example Excel files) |
| SUBJECT* | Subject line of email |
| DATESENT | Date email was sent (format: MM/DD/YYYY) |
| TIMESENT | Time email was sent |
| PARENT_DATE | The date of the parent email should be applied to the parent email and all of the email attachments. |
| TO | All recipients that were included on the “To” line of the email |

| | |
|---|---|
| FROM | The name and email address of the sender of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| AUTHOR | Any value populated in the Author field of the document properties |
| FILENAME* | Filename of an electronic document, loose files and attachments to email. |
| DATEMOD | Date an electronic document was last modified (format: MM/DD/YYYY) |
| DATECREATED | Date the document was created (format: MM/DD/YYYY) |
| REDACTED | Yes should be populated if a document contains a redaction. |
| CONFIDENTIALITY | The confidential designation should be populated. |
| VOLUME | The Production volume name. |
| TIMEZONE | Three letter reference to reflect time zone that data was processed in, as agreed between parties |

10. <u>Hard-Copy Documents.</u> If the parties elect to produce hard-copy documents in an electronic format, the production of hard-copy documents will include a cross-reference file that indicates document breaks and sets forth the custodian or custodian/location associated with each produced document. Hard-copy documents will be scanned using Optical Character Recognition technology and searchable ASCII text files will be produced (or Unicode text format if the text is in a foreign language), unless the producing party can show that the cost would outweigh the usefulness of scanning (for example, when the condition of the paper is not conducive to scanning and will not result in accurate or reasonably useable/searchable ESI). Each file will be named with a unique Bates Number (e.g., the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

**D. Preservation of ESI**

The parties acknowledge that they have a common law obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control. With respect to preservation of ESI, the parties agree as follows:

1. Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody, or control.

2. The parties will supplement their disclosures in accordance with Fed. R. Civ. P. 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under Sections (D)(3) or (E)(1)-(2)).

3. Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

a. Deleted, slack, fragmented, or other data only accessible by forensics.

b. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

c. On-line access data such as temporary internet files, history, cache, cookies, and the like.

d. Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section (E)(5)).

e. Back-up data that are duplicative of data that are more accessible elsewhere.

f. Server, system or network logs.

g. Data remaining from systems no longer in use that is unintelligible on the systems in use.

h. Electronic data (e.g., email, calendars, contact data, and notes) sent to or from mobile devices (e.g., iPhone, iPad, Android devices), provided that a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage) and such back-up locations are within the possession, custody, or control of the party who would otherwise be responsible for preservation.

i. Dynamic fields of databases that are not retained in the ordinary course of business.

3. Nothing in this Order requires or should be construed to require any party to preserve any ESI that is not within its possession, custody, or control.

**E. Privilege**

1. A producing party shall create a privilege log of all documents fully withheld from production on the basis of a privilege or protection, unless otherwise agreed or excepted by this Agreement and Order. Privilege logs shall include a unique identification number for each document and the basis for the claim (attorney-client privileged or work-product protection). For ESI, the privilege log may be generated using available metadata, including author/recipient or to/from/cc/bcc names; the subject matter or title; and date created. Should the available metadata provide insufficient information for the purpose of evaluating the privilege claim asserted, the producing party shall include such additional information as required by the Federal Rules of Civil Procedure. Privilege logs will be produced to all other parties no later than 30 days after substantial completion of a party's rolling document production, but in no event later than 60 days before the deadline for filing motions related to discovery, unless another deadline is agreed to by the parties.

2. If a requesting party believes that one or more entries in a producing party's privilege log should be produced or requires further explanation, the requesting party may raise the issue as to each such log entry in writing by identifying the entry's unique identification number and providing reasonably sufficient detail so that the producing party may understand the

requesting party's position. The producing party shall respond within 14 calendar days. The parties agree to meet and confer to resolve any disputes involving privilege claims. If the parties cannot agree, then the requesting party may seek relief from the Court, following the procedures of any applicable standing orders or rules.

3. Redactions need not be logged so long as the basis for the redaction is clear on the redacted document.

4. With respect to communications between a party and its litigation counsel in this case generated on or after June 17, 2025 (the filing of the original complaint), parties are not required to include any such information in privilege logs.

5. Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

6. Pursuant to Fed. R. Evid. 502(d), the production of any privileged, protected, or exempted documents or electronically stored information (ESI), as well as the production of any documents or ESI without an appropriate designation of confidentiality, whether inadvertent or otherwise, shall not be deemed a waiver or impairment of any claim of privilege or protection by the producing party, for the purposes of this proceeding or any other federal or state proceeding, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law. This Order shall be interpreted to provide the maximum protection allowed by Fed. R. Evid. 502(d). The parties expressly agree that the provisions of Fed. R. Evid. 502(b) do not apply. If any protective order, ESI protocol, confidentiality order, or other order or agreement in this action addresses clawback, non-waiver, or inadvertently produced material, it shall be read consistently with this paragraph and Fed. R. Evid. 502(d); to the extent of any conflict, the broader non-waiver protection in this Order controls unless the later order expressly states that it supersedes this 502(d) protection. Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or

protected information before production. Information produced in discovery that is protected as privileged or work product shall be immediately returned to the producing party.

RESPECTFULLY SUBMITTED AND DATED this 2nd day of October, 2026.

*s/ Kaleigh N. Boyd*
Kaleigh N. Boyd, WSBA No. 52684
**MCNAUL EBEL PLLC**
600 University St., Suite 2700
Seattle, Washington 98101-3143
Telephone: +1.206.389.9332
kboyd@mcnaul.com

Edwin J. Kilpela, Jr.*
James Lamarca*
**WADE KILPELA SLADE LLP**
6425 Living Place, Suite 200
Pittsburgh, PA 15206
Telephone: +1.412.314.0515
ek@waykayslay.com

Evan E. North*
**North Law PLLC**
1900 Market Street, Suite 800
Philadelphia, PA 19103
Telephone: +1.202.921.1651
evan@northlawpllc.com

E. Michelle Drake*
John G. Albanese*
James Hannaway*
**BERGER MONTAGUE PC**
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
Tel: 612-594-5999
Fax: 612-584-4470
emdrake@bergermontague.com
jalbanese@bergermontague.com
jhannaway@bergermontague.com

*Attorneys for Plaintiff and the Proposed Class*

*s/ Erin K. Earl*
Erin K. Earl, WSBA No. 49341
Susan D. Fahringer, WSBA No. 21567
**PERKINS COIE LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Telephone: +1.206.359.8000
Facsimile: +1.206.359.9000
EEarl@perkinscoie.com
SFahringer@perkinscoie.com

*Attorneys for Defendant Chime Financial, Inc.*

**pro hac vice*

**IT IS SO ORDERED.**

Dated this 6th day of October, 2026.

Kymberly K. Evanson
United States District Judge